ISLAND HEIGHTS AND SEASIDE PARK BRIDGE COMPANY, APPELLANT, v. THE BROOKS AND BROOKS CORPORATION, RESPONDENT.

Argued November 19, 1915—Decided March 8, 1916.

1. The prohibition contained in chapter 18 of the laws of 1913 (*Pamph. L., p.* 32) against a corporation purchasing, holding, selling, assigning, &c., shares of stock of any other corporation or corporations of this or any other state is limited, by express terms, to companies organized under the General Corporation act, and the prohibition does not apply to foreign corporations doing business in this state.
2. Section 96 of the General Corporation act (*Comp. Stat., p.* 1657), which provides that foreign corporations doing business in this state shall be subject to the provisions of said act, so far as they can be applied to foreign corporations, does not extend the prohibition contained in chapter 18 of the laws of 1913 to foreign corporations.

On appeal from a judgment of the Supreme Court.

For the appellant, *Charles De F. Besore* (*Berry & Riggins* on the brief).

For the respondent, *McDermott & Enright.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The action in the present case was brought on a contract of subscription to stock in the plaintiff company, a New Jersey corporation, made by the defendant company, a corporation of the State of New York, authorized to do business in this state. The complaint averred that the plaintiff is a bridge company organized under the Bridge act of this state (chapter 385 of the laws of 1912), for the purpose of building a bridge from Seaside Park, New Jersey, to Island Heights, in the same state, and that the defendant is engaged in developing and selling a tract of land at the latter place; that the defendant is a corporation created

by, and organized under, the laws of the State of New York, and under those laws has power to subscribe to the stock of the plaintiff company; that in the exercise of that power the defendant entered into a written agreement for the purchase of ten shares of the capital stock of the plaintiff company of the par value of $50 each; that this agreement was duly executed by the defendant, and was accepted by the plaintiff, and in pursuance thereof, and in accordance with the conditions of the said agreement, the plaintiff called upon the defendant to pay certain installments of the purchase-money for such shares, but that defendant refused to honor said call, and pay the amount due upon its subscription. A copy of the complaint having been served upon the defendant, it thereupon moved to strike out the pleading upon the ground that the agreement was in violation of chapter 18 of the laws of 1913. Argument having been heard upon the motion, and the court being of opinion that the contention of the defendant was well founded, ordered the complaint to be stricken out and judgment entered in favor of the defendant. From that judgment the plaintiff appeals.

Chapter 18 of the laws of 1913 (*Pamph. L., p.* 32) is an amendment of the fifty-first section of our General Corporation act. The provision of the amendment is that "no corporation heretofore organized, or hereafter to be organized, under the provisions of the act to which this is an amendment, or the amendments thereof or supplements thereto,  *   *   * shall hereafter purchase, hold, sell, assign, transfer, mortgage, pledge or otherwise dispose of the shares of the corporate stock of any other corporation or corporations of this or any other state." This restriction upon the corporate power is subject to certain provisos which are not material in the determination of the question to be discussed, and they are, therefore, not specified. In determining the scope of the statutory provision just recited, it is to be remembered that a very large number of the corporations of this state are created by, and organized under, laws other than that known as the General Corporation

act. Many of them are created by special charter, more of them are organized under general laws, such as the General Railroad law, the general law for the creation and organization of street railroad companies, the general law for the organization of gas companies, the general law for the organization of telegraph and telephone companies, and other general laws too numerous to be specifically mentioned. It is also to be remembered that at the time of the enactment of this amendment many corporations of our sister states were doing business in New Jersey by permission of the state conferred by statutory provisions. That the legislature was fully aware of this situation when it passed the amendment of 1913 must be conceded, and it cannot be doubted that this amendment was passed with this knowledge in mind. In other words, it intended that the scope of the amendment should be limited in its operation to those corporations of this state which have been or may hereafter be organized under the General Corporation law. This purpose is clearly expressed by the very language of the statute. Why this limitation was engrafted upon the act is a matter which does not concern the courts. That it was within the power of the legislature to so limit the scope of the statute cannot be denied. Where the purpose of the lawmakers is expressed in language so plain as to make it unmistakable, it must be enforced by the courts as it is written, without regard to its wisdom, or its apparently unwise limitations. *Douglas* v. *Freeholders of Essex,* 38 *N. J. L.* 214, 216. Taken by itself, therefore, the statute interposes no bar to the purchase of the stock of a New Jersey corporation by a corporation created by and organized under the laws of a sister state. It does not, of course, prohibit the sale of its own stock by a New Jersey corporation, even though it be organized under the General Corporation law itself. The prohibition against the sale of stock by a corporation organized under that statute is expressly limited to the stock of *other* corporations.

The Supreme Court appreciated that this statute, standing alone, interposed no bar to the making of the contract sued

on. This is apparent from the opinion delivered therein by Mr. Justice Kalisch. But it was considered that section 96 of the Corporation act (*Comp. Stat., p.* 1657), which provides that "foreign corporations doing business in this state shall be subject to the provisions of this act, so far as the same can be applied to foreign corporations," was to be taken in conjunction with the amendment of 1913, and so made that amendment applicable to the situation disclosed by the complaint. We cannot concur in this view of the effect of section 96. As has already been pointed out, the legislature, at the time of the passage of the amendment of 1913, had full knowledge of the fact that many foreign corporations were doing business in this state under the authority of the section appealed to. If it had been the intention of the legislature to include within the prohibition of the amendment foreign corporations doing business in this state, it would naturally have expressed that intention in the amendment. The fact that it did not do so, and expressly limited the operation of the amendment to the class of corporations described in it, seems to us conclusive that it was no more the legislative intent that it should be operative on foreign corporations doing business in this state, than that it should be operative upon domestic corporations created by statutes other than the General Corporation act. Some persons may think that it would have been wise for the legislature to have done so; others may find it difficult to perceive why the legislature should make any distinction between foreign corporations temporarily doing business in this state, and those not doing business herein, so far as the purchase of the stock of corporations "of this or any other state" is concerned. But, as we have already said, it is not a question of what would have been wise for the legislature to have enacted with which courts are concerned, but what is expressed in the statute; and when the terms used therein clearly express the legislative intent, nothing remains to the courts except the enforcement of that intent as expressed in the enactment.

The judgment under review must be reversed.

*For affirmance*—THE CHANCELLOR, GARRISON, TREN-CHARD, TAYLOR, JJ. 4.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, BLACK, TERHUNE, HEPPENHEIMER, WILLIAMS, JJ. 9.